# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| **W.A.K., a minor, who sues by Page S. Karo** §<br>**his next friend, natural guardian, and mother,** §<br>§<br>Plaintiffs, §<br>§<br>v. §<br>§<br>**WACHOVIA BANK, N.A. Individually** §<br>**and as Co-Trustee of the Rosalie S. Karo Trust** §<br>**u/a October 18, 1966,** §<br>§<br>Defendant. §<br>§<br>**WACHOVIA BANK, N.A. Individually** §<br>**and as Co-Trustee of the Rosalie S. Karo Trust** §<br>**u/a October 18, 1966** §<br>§<br>Third-Party Plaintiff, §<br>§<br>**WILLIAM A. KARO,** §<br>§<br>Third-Party Defendant. §<br>§ | **Case No: 3:09CV00575 (HEH)** |

**WILLIAM A. KARO'S ANSWER AND AFFIRMATIVE DEFENSES TO THE THIRD-PARTY COMPLAINT FILED BY WACHOVIA BANK, N.A.**

William A. Karo ("Mr. Karo"), by and through his counsel, for his Answer and

Affirmative Defenses to the Third-Party Complaint filed herein by the Defendant/Third-Party

Plaintiff, Wachovia Bank, N.A. ("Wachovia"), states as follows:

1.  Mr. Karo admits the allegations contained in paragraph 1 of the Third-Party

CANFIELD | BAER LLP
Paul McCourt Curley, Esquire VSB No. 43974
2201 Libbie Avenue, Suite 200
Richmond, Virginia 23230
Telephone: 804-673-6600
Telecopier: 804-673-6604
E-Mail: pcurley@canfieldbaer.com
  *Counsel for William A. Karo*

Complaint.

2.  Mr. Karo admits the allegations contained in paragraph 2 of the Third-Party Complaint.

3.  Mr. Karo admits only that the Trust documents speak for themselves.  All other allegations contained in paragraph 3 of the Third-Party Complaint are denied and strict proof is demanded thereof.

4.  Mr. Karo admits the allegations contained in paragraph 4 of the Third-Party Complaint.

5.  Mr. Karo admits the allegations contained in paragraph 5 of the Third-Party Complaint.

6.  Mr. Karo admits the allegations contained in paragraph 6 of the Third-Party Complaint.

7.  Mr. Karo admits the allegations contained in paragraph 7 of the Third-Party Complaint.

8.  Mr. Karo admits the allegations contained in paragraph 8 of the Third-Party Complaint.

9.  Mr. Karo admits the allegations contained in paragraph 9 of the Third-Party Complaint.

10. Mr. Karo admits only that the Trust Documents speak for themselves.  In addition, Wachovia has failed to attach any Trust documents to its Third-Party Complaint or otherwise incorporate any Trust documents in its Third-Party Complaint.  All other allegations contained in paragraph 10 of the Third-Party Complaint are denied and strict proof is demanded thereof.

11. Mr. Karo admits that Wachovia is a successor of the CNB.  However, Mr. Karo lacks

sufficient information or knowledge regarding precisely how Wachovia became a successor of the CNB.  All other allegations contained in paragraph 11 of the Third-Party Complaint are denied and strict proof is demanded thereof.

12. Mr. Karo admits that his mother initially funded the Trust with stock from the CNB; that his mother had inherited stock of the CNB from her father, William Harry Schwarzschild; that William Harry Schwarzschild, Mr. Karo's grandfather, was a founder of the CNB; and that Mr. Karo received stock of the CNB through inheritance.  All other allegations contained in paragraph 12 of the Third-Party Complaint are denied and strict proof is demanded thereof.

13. Mr. Karo admits that the Trust continued to hold CNB stock and that it continued to hold the stock of successor banks.  Further, Mr. Karo admits that the Trust documents speak for themselves.  However, Wachovia has failed to attach any Trust documents to its Third-Party Complaint or otherwise incorporate any Trust documents in its Third-Party Complaint.  All other allegations contained in paragraph 13 of the Third-Party Complaint are denied and strict proof is demanded thereof.

14. Mr. Karo admits that the Trust continued to hold the CNB stock and that it continued to hold the stock of successor banks.  Mr. Karo denies the remaining conveniently phrased allegations.  Mr. Karo denies that his son, W.A.K. requested anything of Wachovia or the Trust.  Further, Mr. Karo avers that Wachovia breached its fiduciary duties to him, his father, and his son.  All other allegations contained in paragraph 14 of the Third-Party Complaint are denied and strict proof is demanded thereof.

15. Mr. Karo admits that his father, Andrew T. Karo ("Toney"), was and is a beneficiary of the Trust.  Mr. Karo avers that the Trust documents speak for themselves.  However, Wachovia has failed to attach any Trust documents to its Third-Party Complaint or otherwise

incorporate any Trust documents in its Third-Party Complaint.  All other allegations contained in paragraph 15 of the Third-Party Complaint are denied and strict proof is demanded thereof.

16. Mr. Karo admits that the Trust documents speak for themselves and that an Order dated January 6, 2009 was entered by the Circuit Court of the City of Richmond, which speaks for itself.  However, Wachovia has failed to attach any Trust documents to its Third-Party Complaint or otherwise incorporate any Trust documents in its Third-Party Complaint.

17. Mr. Karo admits that the only issue of his mother, Mrs. Karo, are Mr. Karo and his son, W.A.K.  Mr. Karo denies that any distributions were made to his son, W.A.K., although some distributions made to Mr. Karo may have benefited W.A.K.  Further, Mr. Karo avers that some distributions made by Wachovia were not discretionary but rather self-serving, as such distributions were made to pay debt of Mr. Karo owed to the corporate trustee, Wachovia.

18. Mr. Karo admits that the Trust documents speak for themselves.  However, Wachovia has failed to attach any Trust documents to its Third-Party Complaint or otherwise incorporate any Trust documents in its Third-Party Complaint.  All other allegations contained in paragraph 18 of the Third-Party Complaint are denied and strict proof is demanded thereof.

19. Mr. Karo admits that the Trust documents speak for themselves.  However, Wachovia has failed to attach any Trust documents to its Third-Party Complaint or otherwise incorporate any Trust documents in its Third-Party Complaint.  Further, Wachovia's characterization of Mr. Karo's and W.A.K.'s beneficial interests in the Trust as "identical" is misleading, as each has different interests as to how the Trust should be managed and distributions made.  All other allegations contained in paragraph 19 of the Third-Party Complaint are denied and strict proof is demanded thereof.

20. Mr. Karo admits that, although he was not a trustee, and, thus, had no control over the

4

Trust or its assets, he preferred that the Trust continue to hold Wachovia stock because of his understanding of the tax implications.  However, once again, Mr. Karo was not, and has never been, a trustee of the Trust, and, thus, could not have refused or allowed anything regarding the Trust.  Mr. Karo avers that Wachovia possessed superior knowledge regarding issues of diversification, the value of its own stock, and the propriety of holding its own stock as the major asset of the Trust.  Mr. Karo lacks sufficient information or knowledge necessary to respond to any allegations of what Toney was informed regarding diversification.   All other allegations contained in paragraph 20 of the Third-Party Complaint are denied and strict proof is demanded thereof.

21. Mr. Karo lacks sufficient information or knowledge necessary to respond to any allegations of what Toney was informed or of what Toney directed or requested.  However, Mr. Karo understands that Toney did not participate in any decisions regarding the assets included in the Trust for many years and that Wachovia could not get Toney to respond to Wachovia's requests for Toney to sign a retention letter.  Therefore, Wachovia's characterization that Toney "required and directed" anything are misleading, as Wachovia has full knowledge that Toney did not respond to its requests, that Toney was unable to make such "require[ments] or direct[ions]" and that Wachovia has not communicated directly with Toney for many years.  Further, Mr. Karo, who was (and is) significantly indebted to Wachovia financially, was approached by Wachovia employees in 2001 and requested by Wachovia to get his father's signature on a *pro forma* retention letter.  Upon information and belief, in and after 2001 Wachovia stopped even attempting to communicate with Toney, the co-trustee, directly and relied upon Mr. Karo to obtain his father's signatures on the subsequent *pro forma* retention letters.  All other allegations contained in paragraph 21 are denied and strict proof is demanded thereof.

5

22. Mr. Karo admits that, although he was not a trustee, and, thus, had no control over the Trust or its assets, he preferred that the Trust continue to hold Wachovia stock because of his understanding of the tax implications.  However, once again, Mr. Karo was not, and has never been, a trustee of the Trust, and, thus, could not have refused or allowed anything regarding the Trust.  Mr. Karo avers that Wachovia possessed superior knowledge regarding issues of diversification, the value of its own stock, and the propriety of holding its own stock as the major asset of the Trust.  Mr. Karo lacks sufficient information or knowledge necessary to respond to any allegations of what Toney was informed regarding diversification.   Further, Mr. Karo avers that neither Wachovia nor any of its employees or affiliates' employees ever had any discussions with him in which prudent investment principles and Wachovia's fiduciary duties were discussed.  While Mr. Karo, not a trustee, endorsed retention letters, the language contained is such retention letters does not comport with any actual discussion had between Mr. Karo and Wachovia or any of its employees or its affiliates' employees.  All other allegations contained in paragraph 22 of the Third-Party Complaint are denied and strict proof is demanded thereof.

23. Mr. Karo cannot appropriately respond to the allegations contained in paragraph 23, as Wachovia has failed to plead any particular time period to which the allegations are intended to apply.  Further, the allegations contained in paragraph 23 of the Third-Party Complaint are legal conclusions to which no response is necessary.  Therefore, the allegations contained in paragraph 23 are denied and strict proof is demanded thereof.

24. Mr. Karo cannot appropriately respond to the allegations contained in paragraph 24, as Wachovia has failed to plead any particular time period to which the allegations are intended to apply.  Further, while Mr. Karo admits that Wachovia did have communications with Mr. Karo regarding the Trust from time to time, especially regarding Wachovia's requests for Mr.

Karo to obtain his father's signature on retention letters, Wachovia fails to properly define its term "regular basis", and thus, Mr. Karo cannot appropriately respond to this allegation. Therefore, the allegations contained in paragraph 24 are denied and strict proof is demanded thereof.

25. Mr. Karo admits that the Trust documents speak for themselves.  Further, Wachovia fails to define the term "qualified", and, thus, this allegation is vague and confusing.  Further, the implication by Wachovia, through its carefully worded paragraph, is that it was unable to communicate or consult with the co-trustee, Toney.  However, upon information and belief, Wachovia never made any determinations that Toney was "unqualified" or incompetent to make decisions regarding the Trust.  Instead, Wachovia relied upon Mr. Karo, who, once again, was significantly indebted to it financially, to obtain his father's signatures on retention letters.  All other allegations contained in paragraph 25 are denied and strict proof is demanded thereof.

26. Mr. Karo admits the allegations contained in paragraph 26 of the Third-Party Complaint.  However, Mr. Karo avers that Wachovia was (and is) obligated as the corporate trustee to act in the best interests of the trust and the beneficiaries, including W.A.K.

27. Mr. Karo admits that some meetings between Mr. Karo and Wachovia employees were held between 2001 and 2008.  However, Wachovia's allegations that "Drew repeatedly informed Wachovia employees that he would convey all information related to the Trust to his father, Toney, and Drew further indicated that Toney was relying on Drew to assist him in making decisions" are untrue, and, therefore, denied.  Further, Mr. Karo avers that Wachovia made no attempts to contact, communicate or consult with Toney between 2001 and 2008 and that Wachovia made no attempt to determine whether Toney was capable of acting as co-trustee.  All other allegations contained in paragraph 27 are denied and strict proof is demanded thereof.

7

28. Mr. Karo admits that certain sales of Wachovia stock were consummated.  However, Mr. Karo is uncertain regarding the specific dates or specific number of shares sold.  Further, Mr. Karo was, and has never been, a trustee of the Trust.  Therefore, Mr. Karo could not have consented to or rejected any actions taken on behalf of the Trust as a trustee or co-trustee. Further, while Mr. Karo was not a trustee or co-trustee, he preferred for the Trust to hold the bank stock, given his basic understanding of the tax implications.  However, Wachovia possessed superior knowledge, information and expertise regarding diversification of Trust assets, the value of its own stock, and the propriety of holding its own stock as the major asset of the Trust.  Mr. Karo avers that he repeatedly told Wachovia employees that the ultimate decisions regarding Trust assets were Wachovia's, as it was the trustee.   All other allegations contained in paragraph 28 are denied and strict proof is demanded thereof.

29. Mr. Karo admits that he believed that Wachovia stock was a sound investment. However, Wachovia, the corporate trustee, never provided him with the information it possessed regarding the true value of its stock and failed to act appropriately with its knowledge that the Wachovia stock, especially in its overwhelming concentration, was not a sound investment for the Trust.  Mr. Karo cannot admit or deny any allegations regarding what his father "believed". The remaining allegations contained in paragraph 29 are too vague to allow an appropriate response.  Therefore, the same are denied and strict proof is demanded thereof.

30. Mr. Karo admits that he did sign some Letters of Retention and that these documents speak for themselves.  Further, Mr. Karo admits that Wachovia submitted some Letters of Retention through Mr. Karo for Toney's signature.  However, Mr. Karo denies that any Letters of Retention comport with any actual discussions had between Wachovia employees and Mr.

8

Karo or that Wachovia acted appropriately regarding the overwhelming concentration risks.  All other allegations contained in paragraph 30 of the Third-Party Complaint are denied and strict proof is demanded thereof.

31. Mr. Karo admits that he did sign certain Letters of Retention.  However, while Mr. Karo maintains that these documents speak for themselves, Wachovia has failed to attach any Letters of Retention to the Third-Party Complaint or otherwise incorporate any Letters of Retention in its Third-Party Complaint.  All other allegations contained in paragraph 31 of the Third-Party Complaint are denied and strict proof is demanded thereof.

32. Mr. Karo lacks sufficient knowledge or information regarding the Wachovia's editorial statements of market events, as alleged in paragraph 32 of the Third-Party Complaint. Mr. Karo is not an economist and lacks sufficient expertise necessary to either admit or deny questions regarding if or when the national economy entered a "severe recession" or to respond to any opinions regarding the national economic state.  All other allegations contained in paragraph 32 of the Third-Party Complaint are denied and strict proof is demanded thereof.

33. Mr. Karo lacks sufficient knowledge or information regarding the Wachovia's editorial statements of market events, as alleged in paragraph 33 of the Third-Party Complaint. Mr. Karo is not an economist and lacks sufficient expertise necessary to either admit or deny questions regarding if or when the national economy entered a "severe recession" or to respond to any opinions regarding the national economic state.  While Mr. Karo does admit that he did not revoke the Letter of Retention dated November 11, 2007, Mr. Karo denies that Wachovia recommended to either him or Toney that the Letter of Retention should be revoked or that Wachovia acted properly regarding the overwhelming concentration risks regarding the Trust. All other allegations contained in paragraph 33 of the Third-Party Complaint are denied and

9

strict proof is demanded thereof.

34. Mr. Karo lacks sufficient knowledge or information necessary to either admit or deny the allegations contained in paragraph 34 of the Third-Party Complaint. Therefore, the allegations contained in paragraph 34 of the Third-Party Complaint are denied and strict proof is demanded thereof.

35. Mr. Karo admits that he has supported himself and his family mainly through inherited items and gifts. All other allegations contained in paragraph 35 of the Third-Party Complaint and strict proof is demanded thereof.

36. Mr. Karo admits only that dividends were reduced or eliminated over the last two years. All other allegations contained in paragraph 36 are denied and strict proof is demanded thereof.

37. Mr. Karo admits that the value of his assets deteriorated considerably throughout 2008. Mr. Karo also admits that an attempt was made to terminate the Trust. However, Mr. Karo denies and disputes Wachovia's characterization of the attempt to terminate the Trust as a "grab for cash". Instead, Mr. Karo avers that the attempt to terminate the Trust was made because his father, Toney, did not have enough income to support himself because Wachovia had mismanaged the Trust assets. All other allegations contained in paragraph 37 of the Third-Party Complaint are denied and strict proof is demanded thereof.

38. Mr. Karo admits that he endorsed a disclaimer relative to Toney's income interest in the Trust because Toney did not have enough income to support himself as a result of Wachovia's mismanagement of the Trust assets. Mr. Karo admits that the document speaks for itself. All other allegations contained in paragraph 38 of the Third-Party Complaint and strict proof is demanded thereof.

10

39. Mr. Karo admits that he endorsed a disclaimer relative to Toney's income interest in the Trust because Toney did not have enough income to support himself as a result of Wachovia's mismanagement of the Trust assets.  Mr. Karo admits that he agreed to the entry of an order in which the Circuit Court for the City of Richmond determined that the disclaimer was invalid.  All other allegations contained in paragraph 39 are denied and strict proof is demanded thereof.

40. Mr. Karo admits that he endorsed a disclaimer relative to Toney's income interest in the Trust because Toney did not have enough income to support himself as a result of Wachovia's mismanagement of the Trust assets.  Mr. Karo admits that a motion was filed on his behalf seeking a determination by the Circuit Court for the City of Richmond that the disclaimer was valid.  However, prior to a trial on the matter, Mr. Karo agreed to the entry of an order in which the Circuit Court for the City of Richmond determined that the disclaimer was invalid. All other allegations contained in paragraph 40 are denied and strict proof is demanded thereof.

41. Mr. Karo admits that he endorsed a disclaimer relative to Toney's income interest in the Trust because Toney did not have enough income to support himself as a result of Wachovia's mismanagement of the Trust assets.  Mr. Karo admits that a motion was filed on his behalf seeking a determination by the Circuit Court for the City of Richmond that the disclaimer was valid.  However, prior to a trial on the matter, Mr. Karo agreed to the entry of an order in which the Circuit Court for the City of Richmond determined that the disclaimer was invalid. All other allegations contained in paragraph 41 are denied and strict proof is demanded thereof.

42. Mr. Karo admits that a modification petition was filed and that he suggested that a spendthrift provision be added.  All other allegations contained in paragraph 42 of the Third-Party Complaint are denied and strict proof is demanded thereof.

11

43. Mr. Karo admits that he endorsed a disclaimer and that the disclaimer speaks for itself.  All other allegations contained in paragraph 43 are denied and strict proof is demanded thereof.

44. Mr. Karo admits that a Complaint was filed and that the Complaint speaks for itself, including regarding the identification of counsel.  Further, Mr. Karo admits that an Amended Complaint was filed and that the Amended Complaint speaks for itself.  All other allegations contained in paragraph 44 are denied and strict proof is demanded thereof.

45. Mr. Karo admits that a Complaint was filed and that the Complaint speaks for itself. Further, Mr. Karo admits that an Amended Complaint was filed and that the Amended Complaint speaks for itself.  All other allegations contained in paragraph 45 are denied and strict proof is demanded thereof.

46. Mr. Karo admits that a Complaint was filed and that the Complaint speaks for itself. Further, Mr. Karo admits that an Amended Complaint was filed and that the Amended Complaint speaks for itself.  All other allegations contained in paragraph 46 are denied and strict proof is demanded thereof.

47. Mr. Karo incorporates herein each of the responses to Wachovia's allegations in paragraph 1-46 above.

48. Mr. Karo admits signing LORs in 2004, 2005 and 2007.  However, Mr. Karo denies that they are valid and/or binding because Wachovia did not inform him of his rights and the material facts relating to its requested LOR liability waiver and indemnification.  Further, Wachovia did not inform Mr. Karo that it had a duty to act as sole trustee or seek court instructions because it disagreed with the co-trustee on overconcentration.  Instead, Wachovia sought Mr. Karo's agreement (and its protection) by improperly soliciting self-serving LORs.

The LORs did not explain Wachovia's affirmative duty to act, and instead of solving the retention breach by seeking court instructions, it acted only to protect itself by improperly soliciting self-serving LORs.  Presenting a misleading indemnification LOR to a beneficiary without a full explanation of the facts and law constitutes a breach of Wachovia's duty of loyalty.  Under these circumstances, the LORs are void and should be set aside.  All other allegations contained in paragraph 48 of the Third-Party Complaint are denied and strict proof is demanded thereof.

49. Mr. Karo admits signing an LOR in November of 2007.  Mr. Karo admits that the November 2007 LOR speaks for itself.  However, Mr. Karo denies that the November 2007 LOR is valid and/or binding because Wachovia did not inform him of his rights and the material facts relating to its requested LOR liability waiver and indemnification.  Further, Wachovia did not inform Mr. Karo that it had a duty to act as sole trustee or seek court instructions because it disagreed with the co-trustee on overconcentration.  Instead, Wachovia sought Mr. Karo's agreement (and its protection) by improperly soliciting self-serving LORs.  The LORs did not explain Wachovia's affirmative duty to act, and instead of solving the retention breach by seeking court instructions, it acted only to protect itself by improperly soliciting self-serving LORs.  Presenting a misleading indemnification LOR to a beneficiary without a full explanation of the facts and law constitutes a breach of Wachovia's duty of loyalty.  In addition, Wachovia occupied a confidential and fiduciary relationship with Mr. Karo over the years and took care of his bank, brokerage and trust needs.  Given its dominant relationship over Mr. Karo, putting a letter in front of him for endorsement without explanation was improper.  The November 2007 LOR was not the product of actual meetings in which the substance of the letter was discussed with him.  Instead, the November 2007 LOR was casually mailed to him without any substantive

13

meeting or reflection with Wachovia.  Also, the November 2007 LOR has no impact on Mr.

Karo regarding Wachovia's obligation to sell the over-concentrated Wachovia stock, as the

Wachovia stock was not substantially similar to the bank stock originally held by the Trust

following the mergers/acquisitions in 1997 and 2001.  Simply stated, it was advisable to sell the

Wachovia stock following the merger(s)/acquisition(s) and Wachovia failed to do so.  Under

these circumstances, the LORs are void and should be set aside.  All other allegations contained

in paragraph 49 of the Third-Party Complaint are denied and strict proof is demanded thereof.

50. Mr. Karo denies the allegations contained in paragraph 50 of the Third-Party

Complaint.  Therefore, strict proof is demanded thereof.

51. Mr. Karo admits signing an LOR in November of 2007.  Mr. Karo admits that the

November 2007 LOR speaks for itself.  However, Mr. Karo denies that the November 2007 LOR

is valid and/or binding because Wachovia did not inform him of his rights and the material facts

relating to its requested LOR liability waiver and indemnification.  Further, Wachovia did not

inform Mr. Karo that it had a duty to act as sole trustee or seek court instructions because it

disagreed with the co-trustee on overconcentration.  Instead, Wachovia sought Mr. Karo's

agreement (and its protection) by improperly soliciting self-serving LORs.  The LORs did not

explain Wachovia's affirmative duty to act, and instead of solving the retention breach by

seeking court instructions, it acted only to protect itself by improperly soliciting self-serving

LORs.  Presenting a misleading indemnification LOR to a beneficiary without a full explanation

of the facts and law constitutes a breach of Wachovia's duty of loyalty.  In addition, Wachovia

occupied a confidential and fiduciary relationship with Mr. Karo over the years and took care of

his bank, brokerage and trust needs.  Given its dominant relationship over Mr. Karo, putting a

letter in front of him for endorsement without explanation was improper.  The November 2007

14

LOR was not the product of actual meetings in which the substance of the letter was discussed with him. Instead, the November 2007 LOR was casually mailed to him without any substantive meeting or reflection with Wachovia. Also, the November 2007 LOR has no impact on Mr. Karo regarding Wachovia's obligation to sell the over-concentrated Wachovia stock, as the Wachovia stock was not substantially similar to the bank stock originally held by the Trust following the mergers/acquisitions in 1997 and 2001. Simply stated, it was advisable to sell the Wachovia stock following the merger(s)/acquisition(s) and Wachovia failed to do so. Under these circumstances, the LORs are void and should be set aside. All other allegations contained in paragraph 51 of the Third-Party Complaint are denied and strict proof is demanded thereof.

52. Mr. Karo admits signing an LOR in November of 2007. Mr. Karo admits that the November 2007 LOR speaks for itself. However, Mr. Karo denies that the November 2007 LOR is valid and/or binding because Wachovia did not inform him of his rights and the material facts relating to its requested LOR liability waiver and indemnification. Further, Wachovia did not inform Mr. Karo that it had a duty to act as sole trustee or seek court instructions because it disagreed with the co-trustee on overconcentration. Instead, Wachovia sought Mr. Karo's agreement (and its protection) by improperly soliciting self-serving LORs. The LORs did not explain Wachovia's affirmative duty to act, and instead of solving the retention breach by seeking court instructions, it acted only to protect itself by improperly soliciting self-serving LORs. Presenting a misleading indemnification LOR to a beneficiary without a full explanation of the facts and law constitutes a breach of Wachovia's duty of loyalty. In addition, Wachovia occupied a confidential and fiduciary relationship with Mr. Karo over the years and took care of his bank, brokerage and trust needs. Given its dominant relationship over Mr. Karo, putting a letter in front of him for endorsement without explanation was improper. The November 2007

15

LOR was not the product of actual meetings in which the substance of the letter was discussed with him.  Instead, the November 2007 LOR was casually mailed to him without any substantive meeting or reflection with Wachovia.  Also, the November 2007 LOR has no impact on Mr. Karo regarding Wachovia's obligation to sell the over-concentrated Wachovia stock, as the Wachovia stock was not substantially similar to the bank stock originally held by the Trust following the mergers/acquisitions in 1997 and 2001.  Simply stated, it was advisable to sell the Wachovia stock following the merger(s)/acquisition(s) and Wachovia failed to do so.  Under these circumstances, the LORs are void and should be set aside.  All other allegations contained in paragraph 52 of the Third-Party Complaint are denied and strict proof is demanded thereof.

53. Mr. Karo incorporates herein each of the responses to the allegations set forth in paragraph 1-52 of the Third-Party Complaint.

54. Mr. Karo denies the allegations contained in paragraph 54 of the Third-Party Complaint.  Therefore, strict proof is demanded thereof.  In addition, Mr. Karo avers that Wachovia has failed to state a claim for which relief could be granted by this court on any claim of contribution.

55. Mr. Karo admits that Virginia Code Section 8.01-34 speaks for itself but denies that Wachovia has stated, or that Wachovia could prove, any claim for contribution against him.  All other allegations contained in paragraph 55 of the Third-Party Complaint are denied and strict proof is demanded thereof.

56. Mr. Karo denies the allegations contained in paragraph 56 of the Third-Party Complaint.  Therefore, strict proof is demanded thereof.  In addition, Mr. Karo avers that Wachovia has failed to state a claim for which relief could be granted by this court on any claim of contribution.

16

57.  Mr. Karo denies the allegations contained in paragraph 57 of the Third-Party Complaint.  Therefore, strict proof is demanded thereof.  In addition, Mr. Karo avers that Wachovia has failed to state a claim for which relief could be granted by this court on any claim of contribution.

58.  Mr. Karo denies the allegations contained in paragraph 58 of the Third-Party Complaint.  Therefore, strict proof is demanded thereof.  In addition, Mr. Karo avers that Wachovia has failed to state a claim for which relief could be granted by this court on any claim of contribution.  Mr. Karo was not, and has never been, a trustee or co-trustee of the Trust. Therefore, any allegation or implication by Wachovia that it delegated its fiduciary duties to Mr. Karo and relied upon Mr. Karo, as is expressly pled by Wachovia in its Third-Party Complaint, "to direct the Karo Trust's investments", is an express admission that Wachovia breached its fiduciary duties owed to the Trust beneficiaries, including W.A.K.

59. Mr. Karo denies the allegations contained in paragraph 59 of the Third-Party Complaint.  Therefore, strict proof is demanded thereof.  In addition, Mr. Karo avers that Wachovia has failed to state a claim for which relief could be granted by this court on any claim of contribution.  Mr. Karo was not, and has never been, a trustee or co-trustee of the Trust. Therefore, any allegation or implication by Wachovia that it delegated its fiduciary duties to Mr. Karo and relied upon Mr. Karo, as is expressly pled by Wachovia in its Third-Party Complaint, "to direct the Karo Trust's investments", is an express admission that Wachovia breached its fiduciary duties owed to the Trust beneficiaries, including W.A.K.

60.  Mr. Karo denies the allegations contained in paragraph 60 of the Third-Party Complaint.  Therefore, strict proof is demanded thereof.  In addition, Mr. Karo avers that Wachovia has failed to state a claim for which relief could be granted by this court on any claim

17

of contribution. Mr. Karo was not, and has never been, a trustee or co-trustee of the Trust. Therefore, any allegation or implication by Wachovia that it delegated its fiduciary duties to Mr. Karo and relied upon Mr. Karo, as is expressly pled by Wachovia in its Third-Party Complaint, "to direct the Karo Trust's investments", is an express admission that Wachovia breached its fiduciary duties owed to the Trust beneficiaries, including W.A.K.

61. Mr. Karo denies the allegations contained in paragraph 60 of the Third-Party Complaint. Therefore, strict proof is demanded thereof. In addition, Mr. Karo avers that Wachovia has failed to state a claim for which relief could be granted by this court on any claim of contribution. Mr. Karo was not, and has never been, a trustee or co-trustee of the Trust. Therefore, any allegation or implication by Wachovia that it delegated its fiduciary duties to Mr. Karo and relied upon Mr. Karo, as is expressly pled by Wachovia in its Third-Party Complaint, "to direct the Karo Trust's investments", is an express admission that Wachovia breached its fiduciary duties owed to the Trust beneficiaries, including W.A.K.

62. Mr. Karo incorporates herein each of his responses to the allegations in paragraph 1-61 of the Third-Party Complaint.

63. Mr. Karo denies the allegations contained in paragraph 63 of the Third-Party Complaint. Therefore, strict proof is demanded thereof. In addition, the sole reason any distributions could be deemed improper would be that such distributions were made for self-serving reasons, *i.e.* to pay down Wachovia's own loans, and not for purely discretionary reasons. A "discretionary" distribution conditioned upon the recepient's agreement to return funds to the trustee is not "discretionary" and violated Wachovia's duty of loyalty to Mr. Karo. A trustee, like Wachovia in this case, may not serve its own commercial banking interests with distributions from a trust for which it is the trustee.

18

64.  Mr. Karo denies the allegations contained in paragraph 64 of the Third-Party Complaint.  Therefore, strict proof is demanded thereof.  In addition, the sole reason any distributions could be deemed improper would be that such distributions were made for self-serving reasons, *i.e.* to pay down Wachovia's own loans, and not for purely discretionary reasons.  A trustee, like Wachovia in this case, may not serve its own commercial banking interests with distributions from a trust for which it is the trustee.

65.  Mr. Karo denies the allegations contained in paragraph 65 of the Third-Party Complaint.  Therefore, strict proof is demanded thereof.  In addition, the sole reason any distributions could be deemed improper would be that such distributions were made for self-serving reasons, *i.e.* to pay down Wachovia's own loans, and not for purely discretionary reasons.  A trustee, like Wachovia in this case, may not serve its own commercial banking interests with distributions from a trust for which it is the trustee.

66.  Mr. Karo admits that he received some benefit from distributions made by Wachovia from the Trust.  However, many of the distributions were not discretionary at all but rather self-serving to Wachovia.  All other allegations contained in paragraph 66 of the Third-Party Complaint are denied and strict proof is demanded thereof.

67.  Mr. Karo admits that he received some benefit from distributions made by Wachovia from the Trust.  However, many of the distributions were not discretionary at all but rather self-serving to Wachovia.  All other allegations contained in paragraph 66 of the Third-Party Complaint are denied and strict proof is demanded thereof.

68.  Mr. Karo denies the allegations contained in paragraph 68 of the Third-Party Complaint.  Therefore, strict proof is demanded thereof.

69.  Mr. Karo denies the allegations contained in paragraph 69 of the Third-Party

Complaint.  Therefore, strict proof is demanded thereof.

## AFFIRMATIVE DEFENSES

70.  Wachovia has failed to state a claim for contractual indemnification against Mr. Karo upon which relief may be granted.

71.  Wachovia has failed to state a claim for common law contribution against Mr. Karo upon which relief may be granted.

72.  Wachovia has failed to state a claim for equitable recovery of discretionary distributions made to Mr. Karo upon which relief may be granted.

73.  Wachovia's claims are barred by the doctrines of waiver, estoppel, and/or unclean hands.

74.  The filing of this Third-Party Complaint at this late time, in the midst of an expedited trial schedule and without a sufficient opportunity to discover the facts and information underlying Wachovia's claims against him, violates the due process guarantee of the United States Constitution.  Mr. Karo is contemplating the filing of a motion to sever Wachovia's claim from the trial of the underlying case of W.A.K. v. Wachovia, or a motion to continue the trial.

75.  Mr. Karo reserves the right to assert additional defenses and amend this Answer following discovery and investigation.

**WHEREFORE**, William A. Karo, by counsel, respectfully requests that this Court dismiss the Third-Party Complaint filed herein by Wachovia Bank, N.A., with prejudice; award him his costs and attorneys' fees as provided by Virginia Code Section § 55-550.04 or other applicable law; and for such other and further relief as the nature of the case may require.

**WILLIAM A. KARO,**

By:_____/s/ Paul McCourt Curley_____
                              Counsel

CANFIELD | BAER LLP
Paul McCourt Curley, Esquire VSB No. 43974
2201 Libbie Avenue, Suite 200
Richmond, Virginia 23230
Telephone: (804) 673-6600
Telecopier: (804) 673-6604
E-Mail: pcurley@canfieldbaer.com
  *Counsel for William A. Karo*

21

## CERTIFICATE OF SERVICE

I, Paul McCourt Curley, hereby certify that on December 7, 2009, I have served a true copy of the foregoing, by first-class mail, postage paid, or electronic means, upon all necessary parties as follows:

D. Alan Rudlin, Esquire
William P. Childress, Esquire
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 E. Byrd Street
Richmond, Virginia 23219
*Counsel for Wachovia Bank, N.A.*

Joseph E. Blackburn, Jr. Esquire
Blackburn, Conte, Schilling & Click, PC
300 West Main Street
Richmond, Virginia 23220

Bowlman T. Bowles, Jr., Esquire
Churchill G. Bowles, Esquire
BOWLES AFFILIATES
P.O. Box 12085
404 W. Franklin Street
Richmond, Virginia 23241-0085

*Counsel for Plaintiffs*

_____/s/ Paul McCourt Curley_____