IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| W.A.K., II, A MINOR, BY ) <br> PAGE S. KARO, HIS NEXT FRIEND, ) <br> NATURAL GUARDIAN AND ) <br> MOTHER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WACHOVIA BANK, N.A. *et al.*, ) <br> ) <br> Defendants. ) | Civil Action No. 3:09CV575-HEH |

## MEMORANDUM OPINION
(Cross Motions for Summary Judgment)

This case involves a dispute over the stewardship of the assets of an inter vivos trust. It is before the Court on cross motions for summary judgment. Plaintiff W.A.K. II ("W.A.K." or "Plaintiff"), a minor presently twelve years old, has moved for summary judgment on all issues except for damages. Defendant/Third-Party Plaintiff Wachovia Bank N.A. ("Wachovia," "Bank," or "Defendant") filed a motion for summary judgment on all counts in W.A.K.'s complaint and for partial summary judgment against Third-Party Defendant William A. Karo ("Drew Karo") as to Count I of the Third-Party Complaint. Drew Karo moved for summary judgment as to all counts in the Third-Party Complaint. The parties have submitted memoranda of law in support of their respective positions, and the Court heard oral argument on May 4, 2010. For the reasons stated herein, Plaintiff's motion is denied-in-part, and Defendant's motion is granted-in-part.

## I.

The trust at issue in this case was created for certain designated members of the Karo family. On October 18, 1966, Rosalie S. Karo established the Karo Inter Vivos Residual Trust ("Trust") for the benefit of her husband, Andrew T. Karo ("Toney Karo"), and her descendants. The couple's son, Drew Karo (Third-Party Defendant), and minor grandson, W.A.K., are the couple's only living issue. The Trust originally established Central National Bank ("CNB") and Toney Karo as co-trustees. CNB later merged with Central Fidelity Bank and subsequently with Wachovia, which currently serves as a Trustee. Mrs. Karo established the Trust with a number of assets, but predominately CNB common stock.

Through a series of bank mergers, the Trust became the holder of a number of shares of Wachovia stock, and this stock has remained a significant portion of the Trust's assets. On October 17, 2007, the Trust owned 60,000 shares of Wachovia common stock, constituting approximately 65 percent of the Trust's assets. On several occasions between 2003 and 2007, Wachovia recommended to Toney and Drew Karo that the Trust diversify its assets, but the Karos withheld consent to do so. In fact, Toney and Drew signed several "Letters of Retention" ("LORs") acknowledging Wachovia's advice but indicating a desire to preserve the Trust's ownership of the Wachovia stock. In recent years, Wachovia's stock price suffered a substantial decline, as did that of most banking institutions. As Wachovia's share price declined, so did the value of the Trust.

W.A.K., a remainderman of the Trust,[1] brought this suit in the Circuit Court for the City of Richmond alleging that Wachovia failed to uphold its fiduciary duties as a Trustee. The Defendant removed the case to this Court on September 14, 2009. Plaintiff filed an Amended Complaint on November 9, 2009. Count I alleges that Wachovia breached its fiduciary duty of prudence by failing to diversify the Trust portfolio, leaving a disproportionate volume of trust assets in Wachovia stock. Count II claims that Wachovia breached its fiduciary duty of loyalty, alleging that the bank failed to assume control and act as the sole trustee, allowed Drew Karo to act as a co-trustee, made improper distributions, improperly solicited disclosure letters, and failed to monitor or warn about the declining value of the Wachovia stock. Count III asks the Court to remove Wachovia as a Trustee.

On November 17, 2009, Wachovia brought a third-party complaint against Drew Karo. Count I of the third-party complaint seeks indemnification from Drew Karo for any judgment, costs, and expenses incurred in the underlying litigation as a result of the letters of retention signed by Drew. Count II alleges that Wachovia is entitled to contribution from Drew for any liability found in the underlying suit. Count III asks for equitable recovery of distributions made from trust funds to Drew between 2006 and 2008.

## II.

The Court may grant either party's motion for summary judgment only "if the

---

[1] On August 13, 2008, Toney Karo disclaimed his income interest in the Trust, and Drew Karo disclaimed his remainder interest in the Trust on January 28, 2009.

3

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that [the moving party] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). A genuine issue of material fact exists under Rule 56 "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). When evaluating a motion under Rule 56, the Court must construe all "facts and inferences to be drawn from the facts . . . in the light most favorable to the non-moving party." *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (internal quotations omitted).

## III.

### A. Count I–Duty of Prudence

In Count I, Plaintiff W.A.K. alleges a breach of fiduciary duty of prudence by Defendant Wachovia for failure to diversify the trust assets.

#### 1. Retention of Wachovia Stock

The Prudent Investor Rule, as codified in Va. Code § 26-45.4[2] and § 55-548.04, lays out the standard of care that a trustee must exercise in managing a trust. This rule

---

[2] Va. Code § 26-45.4 is incorporated into the Uniform Trust Code by Va. Code § 55-548.01.

4

requires that the trustee "invest and manage trust assets as a prudent investor would . . . considering [all] circumstances of the trust . . . [and] exercising reasonable care, skill, and caution." Va. Code § 26-45.4.

Wachovia's defense to this claim is three-fold. Wachovia argues that the trust effectively waived the Prudent Investor Rule, that Toney, as co-trustee, repeatedly declined to consent to the sale of Wachovia stock, and lastly, that Drew instructed Wachovia to retain the stock despite the Bank's advice to the contrary and that his waiver is binding on the Plaintiff, his minor son.

### a. Waiver of the Prudent Investor Rule

Wachovia argues first that the terms of the Trust waived the requirements of the Prudent Investor Rule, precluding liability for the investment decisions at issue. The Prudent Investor Rule "may be expanded, restricted, eliminated, or otherwise altered by the provisions of a trust." Va. Code § 26-45.3. For such a waiver to be effective, the language of the trust must "expressly manifest[] an intention that [the Rule] be waived" in one of the following ways:

> (i) by reference to "prudent man" or "prudent investor" rule,
> (ii) by reference to power of the trustee to make "speculative" investments,
> (iii) by an express authorization to acquire or retain a specific asset or type of asset such as a closely held business, or
> (iv) by other language synonymous with (i), (ii) or (iii).

*Id.* Wachovia argues that the Karo Trust expressly manifests an intent to waive the requirements of the Prudent Investor Rule and authorized retention of specific assets.

5

Article Three of the Karo Trust vests the Trustees with broad discretion in the investment of the Trust assets. Three provisions are particularly relevant. First, the Trust empowers the Trustees to take actions "as they in their uncontrolled discretion may deem advisable," subject to certain conditions. Second, the Trust authorizes the Trustees "[t]o retain as permanent any now existing investments (including stock of the corporate Trustee or in any of its affiliates and holding companies) of the trust property and any investments hereafter transferred to the Trustees . . . ." Thirdly, the Trust authorizes the Trustees "to invest the trust property and from time to time alter, change, or vary such investments and reinvestments thereof without being confined to investments lawful through statute or otherwise for fiduciaries in the State of Virginia . . . ."

The question of whether the language of a trust effectively waives the Prudent Investor Rule is one for the court. *See, e.g., Hoffman v. First Va. Bank*, 220 Va. 834, 841, 263 S.E.2d 402, 407 (1980). In considering the language of the Karo Trust, the Court finds that it waived the requirements of the Prudent Investor Rule as it related to the Trust property at the Trust's creation (specifically including stock of the corporate trustee and related companies) and any investments later transferred to the Trust. Although the language of waiver was not so broad as to grant an unlimited waiver of the Prudent Investor Rule, the language unequivocally expressed Rosalie Karo's intent that the Trustees could maintain the initial assets of the Trust (specifically including the stock of the corporate Trustee) and any assets transferred to the Trust without being bound by the

Prudent Investor Rule.

Plaintiff argues that the authorization to retain the investments originally in the trust applies only to the CNB stock and not to the successor Wachovia stock. Plaintiff argues that the Court must conduct an analysis similar to that in *Hirsch v. Hirsch*, 209 Va. 630, 166 S.E.2d 286 (1969), to determine whether the Wachovia stock should be treated as the equivalent of the CNB stock. In *Hirsch*, the trust at issue prohibited the "selling, transferring or exchanging [of] Lock Joint stock without the approval of certain beneficiaries of the trust . . . ." *Id.* at 630, 166 S.E.2d at 286. Lock Joint merged with another company to form Interpace. In subsequent litigation, the Virginia Supreme Court confronted the question of whether the prohibition on sale of the Lock Joint stock applied equally to the Interpace stock. *Id.* at 630-34, 166 S.E.2d at 286-88. To answer this question, the court was required to determine whether the new stock was "substantially equivalent" to its predecessor. *Id.* at 634, 166 S.E.2d at 288-89.

For several reasons, this Court is not convinced that a *Hirsch*-type analysis is necessary in this case. First, the Karo Trust, rather than referring to the CNB stock by name, refers only to "any now existing investments (including stock of the corporate Trustee or in any of its affiliates and holding companies) . . . ." The Trust appears to stake out a specific exemption for the stock of the corporate trustee, whoever it may be at a particular time. Second, and perhaps more specifically, the Trust exempts "any investments hereafter transferred to the Trustees . . . ." The Wachovia stock was not

7

acquired by purchase. It was transferred into the Trust at the time of the merger and thus falls under the exemption of investments "transferred to the Trustees." Third, as Defendant notes, the National Banking Act states that when a state or national bank merges into a national bank, like Wachovia, the post-merger entity is deemed to be the same corporation as the bank which preceeded the merger. 12 U.S.C. § 215a(e); *Cannon v. Dixon*, 115 F.2d 913, 915 (4th Cir. 1940); *see also* Va. Code § 6.1-36 (similar rule under the Virginia Banking Act).

Since the Trust's waiver of the Prudent Investor Rule applies to the retention of the Wachovia stock, no breach of the duty of prudence was committed by its retention. Furthermore, Wachovia's duty only required that its interpretation of the Trust language be reasonable and relied on in good faith. As the Uniform Trust Code states, "A trustee who acts in reasonable reliance on the terms of the trust as expressed in the trust instrument is not liable to a beneficiary for a breach of trust to the extent the breach resulted from the reliance." Va. Code § 55-550.06. Virginia law further provides that "[a] trustee shall not be liable to a beneficiary for the trustee's good faith reliance on a waiver of the [prudent investor rule]." Va. Code § 26-45.3. Wachovia's interpretation of the Trust language was at least a *reasonable* interpretation, relied on in good faith.

### b. Toney Karo's Actions as Co-Trustee

Wachovia argues additionally that it is not liable for the losses suffered by the Trust because Toney, as a co-trustee, consented to the retention of the Wachovia stock.

8

The Trust named Toney and CNB as co-trustees. As stated in the Amended Complaint, "On several occasions, [Wachovia] recommended the Trust's 60,000 share Wachovia stock position be diversified, but Toney and Drew did not agree." Am. Compl. ¶ 14. On October 3, 2003, Toney signed a document provided by Wachovia entitled "Direction to Retain - Wachovia Corporation Security." The document acknowledged that Toney directed the retention of 65,000 shares of Wachovia stock despite the fact that it was unwise and contrary to Wachovia's investment policies. The document specifically released Wachovia from liability and responsibility for Toney's investment decision and indemnified Wachovia for any resulting losses or damages. The document also stated that it would remain in effect until withdrawn. On April 11, 2004, Toney signed a similar document again provided by Wachovia, this time covering 65,000 shares of Wachovia common stock and 71,612 shares of Wachovia preferred stock. Toney signed a third retention document on September 29, 2005, reiterating the bank's investment warnings. Wachovia sent a fourth document to Drew and Toney on October 17, 2007, this time covering only the 60,000 shares of Wachovia stock. On November 7, 2007, Drew signed on behalf of his father, withholding consent to diversification and stating that it was executed under authority of a Power of Attorney. There is no evidence that any of these retention documents were returned unsigned or that Toney ever attempted to rescind these retention authorizations.

9

### 3. Waiver by Drew Karo

Based on the execution of the above-described documents, Wachovia additionally argues that the trust beneficiaries waived any potential claims for breach of the duty of prudence resulting from retention of Wachovia stock. Virginia law provides in pertinent part that:

> A trustee is not liable to a beneficiary for breach of trust if the beneficiary consented to the conduct constituting the breach, released the trustee from liability for the breach, or ratified the transaction constituting the breach, unless:
> 1. The consent, release, or ratification of the beneficiary was induced by improper conduct of the trustee; or
> 2. At the time of the consent, release, or ratification, the beneficiary did not know of the beneficiary's rights or of the material facts relating to the breach.

Va. Code § 55-550.09. It is clear that Toney and Drew consented to the retention of the Wachovia stock through the various LORs. The remaining question, however, is whether Wachovia's actions somehow breached their duty to Plaintiff W.A.K., a minor and residual remainderman. Wachovia alleges that Drew, as W.A.K.'s parent, had authority to consent to Wachovia's actions on W.A.K.'s behalf. Virginia law provides that "[a] parent may represent and bind the parent's minor or unborn child if a guardian of the estate or guardian for the child has not been appointed" and there is no conflict of interest between the parent and the minor. Va. Code § 55-543.03; *see also* Va. Code § 55-543.04. In assessing the conflict issue, these statutes permit the Court to examine whether interests are aligned only with respect to the "particular question or dispute." Va. Code

10

§§ 55-543.03, -543.04. Precedent from Virginia courts applying these statutes is scant and unilluminating. Consequently, this Court is reluctant to interpret this statute in the absence of state court guidance unless critical to the resolution of this case.

The Court, however, is satisfied that the terms of the Trust, coupled with Toney's actions as co-trustee, as detailed above, do not demonstrate an actionable breach of duty of prudence on Wachovia's part. Accordingly, with respect to the conflict issue, the Court does not reach this issue but doubts that a conflict exists under the circumstances presented in this case. Plaintiff urges the Court to consider Drew's requests for distributions from the Trust corpus as being at tension with W.A.K.'s interests. The "particular question or dispute" presented is the investment strategy of the remaindermen. At the time the letters of retention were submitted, Drew had not disclaimed his interest in the Trust and was still a remainderman. Although some of the distributions to Drew were used to retire personal debt, others defrayed family-related expenses. Moreover, at the time, Drew relied on the Trust as an income source. Therefore, both Drew and W.A.K. had an interest in the long-term growth of assets in the Trust. As such, the Court doubts their interests were in conflict in this context. *See NationsBank of Virginia, N.A. v. Estate of Grandy*, 248 Va. 557, 560, 450 S.E.2d 140, 142-43 (1994).

### 2. Failure to Act as Sole Trustee

Next, Plaintiff argues that Wachovia should have treated Toney as an

11

"'unavailable' co-trustee" and assumed control as sole trustee.[3] Article Three, Clause 3 of the Trust provides that "[s]hould either of the Trustees fail or cease to act, then all title, powers, authorities, and discretions which otherwise would be possessed by both shall be possessed by the one so accepting or so continuing to act." The Court is unpersuaded by Plaintiff's argument that Toney's instructions should be disregarded. Plaintiff alleges that Toney "had little interest or disposition to be involved in Trust matters . . . ." Toney's subjective interest in being involved in the Trust is irrelevant. Under the terms of the Trust, the assets were administered under the joint direction of Wachovia and Toney. While Toney assumed a passive role, he unquestionably assisted in governing the Trust's administration throughout the life of the Trust. With respect to the Trust's ownership of Wachovia stock, Toney signed retention documents in 2003, 2004, and 2005, as mentioned above. In November of 2006, Toney signed a letter authorizing a withdrawal of $100,000 from the Trust. In other instances, Drew acted on Toney's behalf through the exercise of a lawful durable power of attorney. While Plaintiff may take issue with the consequences of Toney's investment decisions, he is unable to direct the Court's attention to any specific instances of a knowing failure to act.

Toney's continued participation in governing the Trust also detracts from W.A.K.'s argument that Wachovia abused its discretion by retaining the Wachovia stock.

---

[3]The parties have stipulated that all claims and contentions that Toney lacked the capacity to serve as a co-trustee are withdrawn. The Court will view W.A.K.'s allegation only that Toney *failed* to act; not that he lacked the capacity to do so.

12

W.A.K. argues that Wachovia had the independent duty to unilaterally sell the Wachovia stock as soon as it was viewed as imprudent to retain a concentrated amount. The Trust, however, required action by the Trustees jointly. Wachovia provided advice to Toney that he chose to disregard. As long as Toney withheld consent, Wachovia was powerless to act. Consequently, this contention cannot support a breach of prudence claim.

### 3. Failure to Provide Advice on Wachovia Stock

Alternatively, Plaintiff contends that Wachovia breached its duty of prudence by failing to provide advice to the co-trustee about the investment-worthiness of Wachovia stock. Such advice, however, has obvious legal and practical implications.

First, Plaintiff argues that "It is a breach of the fiduciary duty of loyalty for a trustee to administer its own stock in a trust unless authorized to do so." Mem. in Supp. of Mot. for Summ. J. at 12. Plaintiff further argues that "Because the Karo Trust does not exclude any assets from the trustee's investment responsibilities, the trustees have a duty to monitor, advise and protect regarding all trust assets, including Wachovia stock." *Id.* Plaintiff's logic would place Wachovia in an untenable position – it could either give advice on the Wachovia stock and violate the duty of loyalty, or it could abstain and violate the duty of prudence.[4] At oral argument, Plaintiff argued that Wachovia should have given Toney publicly-available information regarding the investment-worthiness of Wachovia stock. Plaintiff's argument, however, ignores the necessary implications of the

---

[4] Advice by Wachovia in this manner could potentially be the basis of an accusation of trading on insider information. 17 C.F.R. § 240.10b-5.

13

prohibition on self-dealing by a corporate trustee. Virginia law specifically prohibits a bank acting as a trustee from purchasing trust assets from itself. Va. Code § 6.1-24. Virginia law also bars a trustee from engaging in transactions with a corporation in which the trustee has a significant interest, subject to certain exceptions. Va. Code § 55-548.02. A necessary corollary precludes a bank serving as a trustee from circumventing this prohibition by enlisting a co-trustee to conduct the conflicted transaction. Plaintiff's argument that Wachovia should have advised on its own stock flies in the face of this prohibition.

In recognition of these potential conflicts, Wachovia provided numerous disclaimers acknowledging its potential conflict of interest in the Trust's ownership of Wachovia stock. In addition to these admonitions, the disclaimers stated Wachovia's policy of diversification of Trust assets unless directed otherwise, giving Toney and Drew the ultimate authority to direct the Trustees' actions. Toney acknowledged and ratified the disclaimer in 2003. Toney and Drew did so together in 2004 and 2005, and Drew signed on his and Toney's behalf in 2007. Wachovia satisfied its duty by disclosing the conflict to Toney and Drew and giving them the ultimate authority to direct the investment. Wachovia fulfilled all duties required under Virginia law and the terms of the trust instrument.

### B. Count II–Duty of Loyalty

Count II of the Amended Complaint alleges a breach of fiduciary duty of loyalty.

As a fiduciary, a trustee owes a duty of loyalty to the beneficiaries of the trust. Va. Code § 55-548.02. The Restatement, Third of Trusts lays out the duty of loyalty in detail:

> (1) Except as otherwise provided in the terms of the trust, a trustee has a duty to administer the trust solely in the interest of the beneficiaries, or solely in furtherance of its charitable purpose.
> (2) Except in discrete circumstances, the trustee is strictly prohibited from engaging in transactions that involve self-dealing or that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests.
> (3) Whether acting in a fiduciary or personal capacity, a trustee has a duty in dealing with a beneficiary to deal fairly and to communicate to the beneficiary all material facts the trustee knows or should know in connection with the matter.

Restatement (Third) of Trusts § 78 (2007).

W.A.K. argues that Wachovia breached its duty of loyalty through several actions. The Court will address each in turn.

### 1. Improper Trustee Delegation

First, Plaintiff alleges that Wachovia violated its duty of loyalty through "improper trustee delegation" by "permitting Drew to act as a co-trustee by consulting with and executing Bank administration documents." As stated above, Drew endorsed several documents that approved retention of Wachovia stock, but he did so in different capacities. Drew signed the 2004, 2005, and 2007 letters as a beneficiary. A beneficiary can authorize a trustee to engage in an otherwise prohibited transaction. § 55-548.02(B)(4). Drew's signing as a beneficiary did not somehow convert him to a co-trustee.

Drew also signed the 2007 letter on behalf of Toney pursuant to a durable power

of attorney. Such a delegation of trustee duties is consistent with Va. Code § 55-548.07. Plaintiff's argument rests on two references to Drew as a "co-trustee" in an e-mail and a credit memorandum. Such scant references do not constitute actual delegation of duties. Plaintiff points to no actions by Wachovia or Drew that would legally or factually elevate Drew to a "co-trustee."

### 2. No Unanimous Trustee Action

Next, Plaintiff redeploys his contention that Wachovia should have treated Toney as an unavailable co-trustee and should have acted as the sole trustee. As discussed above, Toney did not fail to act. Toney signed documents or acted through his agent on numerous occasions. Plaintiff's allegations that Wachovia employees did not meet with Toney face-to-face or speak directly with Toney is of little import. Toney's actions speak for themselves. Plaintiff's purported disagreement with his grandfather's investment decisions has no effect on the Trustees' duties. This theory of breach is without legal support.

### 3. Misleading Exculpation Requests

Plaintiff alleges that the numerous LORs sent to Toney and Drew seeking authorization to hold Wachovia stock were self-serving, misleading, and constituted a violation of the duty of loyalty. Plaintiff argues that these letters misrepresented Wachovia's fiduciary duties by stating that it could not monitor or manage the Trust's Wachovia stock. As stated above, if Wachovia had given advice on the sale or purchase

16

of Wachovia stock, it could have found itself in violation of the prohibition on self-dealing. The LORs notified the co-trustee and beneficiary of the potential conflict and reminded them of their authority to direct the investment of Trust assets. The content of these disclosures was factually and legally sound and did not constitute a breach of the duty of loyalty.

### 4. Self-Serving Discretionary Distributions

Plaintiff alleges that Wachovia further violated its duty of loyalty by issuing $200,000 in trust distributions to Drew, which were apparently used to reduce his personal debt to Wachovia. Plaintiff argues that these distributions amounted to self-dealing. In 2007 and 2008, Drew wrote to Faye Harris, a vice president with Wachovia, requesting $100,000 in trust funds. Both of Drew's letters stated: "These funds will be directly used to curtail several credit card balances and credit lines that I have with Wachovia." The language of the Trust gives the corporate trustee the authority to make distributions to support Drew's "general welfare and comfort." The validity of these financial obligations do not appear to be at issue.

A beneficiary may void a transaction that violates the trustee's duty of loyalty unless "[t]he transaction was authorized by the terms of the trust." Va. Code § 55-548.02 (other exceptions apply). Wachovia was, in this case, acting pursuant to language in the Trust that authorized it to make such distributions "in its uncontrolled discretion." The Virginia Supreme Court has held that a Trustee acting under such authority is only liable

17

if the beneficiary establishes that it acted dishonestly, in bad faith, or abused its discretion. *Hoffman*, 220 Va. at 842, 263 S.E.2d at 408. The Trust authorized the corporate trustee to make payments to Drew for his "general welfare and comfort including, among other things, support, maintenance, education, and hospital, medical, and nursing expenses . . . ." Paying down Drew's credit card balances and credit lines provided for Drew's welfare and comfort. It was within Wachovia's discretion to make these payments upon his request, regardless of which creditor Drew intended to pay. Where the Trust authorizes such payments, the trustee's decision to act accordingly is not an abuse of discretion. *Hoffman*, 220 Va. at 842, 263 S.E.2d at 408.

### 5. Failure to Seek Guidance from a Court

On an alternative front, Plaintiff maintains that Wachovia violated its fiduciary duty of loyalty by not seeking a Court's intervention in pursuing diversification of the Trust assets. Plaintiff points to Wachovia's seeking of guidance in a similar but unrelated case, *Wachovia Bank v. Gray*, Case No. CH05-1546 (Richmond City Cir. Ct.), as evidence that Wachovia was aware of its duty to do so in cases of this type. Plaintiff cites the Second Restatement of Trusts, which Wachovia relied upon in the *Gray* case, for the proposition that Wachovia was duty-bound to seek a court's guidance in resolving a deadlock between trustees. In relevant part, the Restatement explains:

> If the circumstances are such that it is the duty of the trustees to exercise a power conferred upon them, and one of them refuses to concur in the exercise of the power, the other trustees are not justified in merely acquiescing in the non-exercise of the power. See § 185. In such a case it is their duty to apply

18

to the court for instructions.

Restatement (Second) of Trusts § 184 cmt. c (1959). For this provision to apply, there must be an action that the trustees, as fiduciaries, are required to exercise. As discussed above, the language of the Trust waived the Prudent Investor Rule for the Wachovia stock. It was not a breach of fiduciary duty to retain the Wachovia stock, and there was thus no duty to seek a court's intervention. Additionally, the Trust granted both Toney and the corporate trustee the authority to take action with regard to investment decisions "in their uncontrolled discretion." Toney made the decision to withhold consent to diversification, as was his right under the terms of the Trust.[5] There was no legal duty for Wachovia to seek the aid and guidance of a court.

### 6. Failure to Monitor, Warn, and Protect

Finally, Plaintiff argues that Wachovia's failure to monitor the Wachovia stock in the Trust constituted a breach of the duty of loyalty. Plaintiff contends that any perceived prohibition on giving advice on its own stock was trumped by an "over-arching duty to be prudent and to monitor, warn and protect the Trust even if it holds its own stock." As discussed above, were Wachovia to give advice on the sale or purchase of Wachovia stock, it could have found itself in violation of the prohibition on self-dealing. Therefore, Wachovia's decision to abstain from giving advice on its own stock was a legally-sound

---

[5] Also critical to the analysis is the well-reasoned basis for Toney's decision to not diversify. Aff. of Frederick Hall ¶¶ 9, 14 (stating that Toney, through Drew, expressed his desire to retain the Wachovia stock for tax reasons, historic stock performance, and sentimental considerations); Aff. of Faye Harris ¶ 19 (same).

decision and not a violation of its fiduciary duty.

## IV.

For the reasons stated above, Plaintiff's motion for summary judgment is denied as to Counts I and II of the Amended Complaint. Defendant's motion for summary judgment is granted as to Counts I and II of the Amended Complaint. The Court finds that Wachovia did not violate the fiduciary duty of prudence or the fiduciary duty of loyalty owed to Plaintiff.

Plaintiff's and Defendant's motions for summary judgment as to Count III of the Amended Complaint and the motions for summary judgment on the Third-Party Complaint remain pending. Should the parties wish to continue prosecuting these remaining claims, the Court will rule on these aspects of the motion on a later date.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

ENTERED this 12th day of May, 2010.
Richmond, VA