IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

W.A.K., II, A MINOR, BY )
PAGE S. KARO, HIS NEXT FRIEND, )
NATURAL GUARDIAN AND )
MOTHER, )
 )
                Plaintiff, ) Civil Action No. 3:09CV575-HEH
 )
v. )
 )
WACHOVIA BANK, N.A. *et al.*, )
 )
                Defendants. )

## MEMORANDUM OPINION
(Motion for Determination of Recoverability of Attorneys' Fees)

Pursuant to the Court's Memorandum Opinion of July 19, 2010, this matter is before the Court for determination of the amount of costs, expenses, and fees due to Defendant/Third-Party Plaintiff Wachovia Bank N.A. ("Wachovia"). In the Court's previous opinion, the Court found that an award of attorneys' fees to Wachovia from the Karo Inter Vivos Residual Trust ("Trust") was appropriate pursuant to Virginia Code section 55-550.04.

### I.

In the underlying claim, Plaintiff W.A.K. II ("W.A.K."), a minor and remainderman under the trust agreement, sought to recover damages from Defendant/Third-Party Plaintiff Wachovia Bank N.A. ("Wachovia"), a co-trustee, for an alleged breach of fiduciary duty. On May 12, 2010, the Court granted summary judgment

on the underlying claims in favor of Wachovia. Wachovia now seeks to recover its associated fees, costs, and expenses from the Trust pursuant to Virginia Code § 55-550.04.[1] In the Court's July 19, 2010, opinion, the Court found that Wachovia was permitted to recover its reasonable fees, costs, and expenses from the Trust but deferred determination of the amount due. Both sides have filed briefs in support of their respective positions as to the amount recoverable, and the Court heard oral argument on July 27, 2010.

## II.

Virginia Code section 55-550.04 states that attorneys' fees, if awarded, are limited to "reasonable attorneys' fees."[2] In determining what amount is reasonable, the Court "must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Svcs.*, 560 F.3d 235, 243 (4th Cir. 2009). The Fourth Circuit has set out twelve "*Johnson*" factors to guide a district court in determining a reasonable number of hours and rate:

---

[1] Section 55-550.04 states in pertinent part:

In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorneys' fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

Va. Code § 55-550.04.

[2] W.A.K. argues that the amount of fees recoverable from the Trust can be set using equitable considerations, focusing on statute's use of the phrase "as justice and equity may require." Va. Code § 55-550.04. The Court finds that under a plain reading of the statute, equity is only a factor as to whether fees are awarded from a trust. If awarded, the amount of fees recoverable is guided by a reasonableness determination.

2

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Spell v. McDaniel*, 824 F.2d 1380, 1402 n. 18 (4th Cir. 1987).[3] "After determining the lodestar figure, the court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Robinson*, 560 F.3d at 244 (citations omitted). Lastly, the Court then "awards some percentage of the remaining amount, depending on the degree of success enjoyed by the [fee applicant]." *Id.* (citations omitted).

**A. *Johnson* Factors**

**1. Time and Labor Expended**

"The party seeking an award of fees should submit evidence supporting the hours worked . . . ." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Excessive, redundant, and unnecessary hours should be excluded from the fee award. *Id.* at 434.

In support of its request, Wachovia has submitted billing records supporting a claim for 2,418.6 hours. This total consists of 828.9 hours billed by attorney Alan Rudlin,

---

[3]Wachovia argues that Virginia law controls in determining the reasonableness of attorneys fees. The Court believes that the federal standard and the Virginia standard are so similar that use of the federal standard for "simplicity and straightforwardness" is warranted. *In re Abrams & Abrams*, 605 F.3d 238, 244 (4th Cir. 2010).

3

1195.9 hours billed by attorney William Childress, and 393.8 hours billed by paralegal Benjamin Sherman. Wachovia argues that this number of hours was appropriate given the novelty and complexity of the controlling issues, the number of interrogatories and requests for production from the Plaintiff, the amount of documents to view in the case, and the number of depositions. Wachovia also filed two motions to exclude evidence and two motions *in limine* that the Court never ruled on because the case did not go to trial. Wachovia removed the case from state court, filed a motion to dismiss that was denied in large part, and succeeded at the summary judgment stage. The state action was filed on August 13, 2009, and summary judgment was entered in Wachovia's favor on July 19, 2010.

W.A.K. argues that the number of hours claimed by Wachovia is excessive for several reasons. W.A.K. contends that Wachovia "wasted time" on objections to interrogatories and document requests, particularly those that Wachovia was required by the Uniform Trust Code to produce. W.A.K. argues that such jousting over discovery was needless.

According to their affidavits, the attorneys for Plaintiff estimate that they spent approximately 1,100 hours on this case. They argue that their Wachovia counterparts overworked the case by expending more hours than was necessary. Wachovia contends that this case carried special significance because of the threat to its reputation as a fiduciary and the precedent it would set for similar litigation. On the other hand, W.A.K.

counters that it should not have to bear the burden of paying for the costs of litigation attributed to preventing other lawsuits. While impugning Wachovia's reputation as a fiduciary was not W.A.K.'s intended goal in filing this lawsuit, such litigation, however, certainly had that foreseeable consequence. Moreover, it is equally logical that a significant adverse ruling would in all likelihood invite other similar litigation.

## 2. Novelty and Difficulty of the Questions Raised

Wachovia claims that the issues presented in this case raised complex issues of first impression, justifying the number of hours expended. Wachovia argues that it was litigating in uncharted waters as very few cases have addressed fiduciary duties under the Uniform Trust Code. Wachovia also lays the blame on Plaintiff for raising novel and "tenuously supported" theories of liability that took time to unravel and research.

W.A.K. takes a much different stance, arguing that fiduciary litigation is a far less complex area of law than Defendant contends. W.A.K. submits that the case was "simple and straightforward" and was "hardly 'intensive litigation.'"

As noted by the Court at oral argument, this litigation was complex, but not of the highest order. As seen in the Court's opinions, the issues turned largely on interpretation of the Trust agreement and disclosure/waiver letters squared against the language of the Uniform Trust Code. The complexity of the analysis was heightened by the scarcity of caselaw guiding the application of the Trust Code. Although some of the legal issues

5

addressed were intricate, the case did not merit placement in the highest percentile of complexity.

### 3. Skill Required to Properly Perform the Legal Services Rendered

Wachovia argues that this was a challenging case to defend in large measure because of the unusual nature of Plaintiff's claims. The bank points out that a number of issues required the assistance of experts to fully grasp. For this reason and the arguments above, Wachovia believes this factor supports their fee request.

Plaintiff contends that the issues raised were fairly commonplace and did not require any specialized skill other than that typically required of commercial litigators. It should not be compared to patent or bankruptcy cases that require heightened skill and experience, as Wachovia suggests.

The Court again sees merit in the arguments raised by both sides. While this case was complex and necessitated the presence of experienced litigators on both sides, it did not require unique skill or experience.

### 4. The Attorneys' Opportunity Costs in Pressing the Instant Litigation

Wachovia states that case preparation required substantial time and that work on this case precluded the attorneys from working on other matters. The Court has no evidence to the contrary, and this factor weighs in favor of finding the requested fee reasonable.

### 5. The Customary Fee for Like Work

"[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). The applicant must produce evidence, in addition to his own affidavits, of the prevailing rate in the specific market for the type of work performed. *Id.*

In the present motion, Wachovia requests $595 per hour for the work performed by Alan Rudlin, the partner heading the litigation team, $270 to $320 per hour for the work performed by Bill Childress, the associate assigned to the case, and $128 per hour for work done by Benjamin Sherman, the paralegal. In support of these hourly rates, Wachovia submitted billing records for the two attorneys, affidavits from the two attorneys, and affidavits from Steven E. Baril, Esq. and James C. Roberts, Esq., two litigators practicing with other law firms in Richmond. Baril stated that the rates for Rudlin, Childress, and Sherman were "within the prevailing market rates" for attorneys and paralegals in the Richmond area with their respective levels of experience. Baril Decl. ¶ 28. Roberts stated that the rates for Rudlin and Childress were "reasonable and consistent with the rates charged by attorneys in this area during the relevant periods possessing the background, skill, and specialized experience of these attorneys for handling large civil cases of this nature." Roberts Decl. ¶ 11. Wachovia also submitted a declaration of Mr. Rudlin stating that the rates charged to Wachovia in this case were discounted from his, Mr. Childress's, and Mr. Sherman's usual rates of $695-$710, $375,

and $175, respectively. Rudlin Decl. ¶¶ 4-5. As noted by Wachovia, the rates charged to paying clients by the petitioning attorneys can assist a court in determining the prevailing market rate. *Rum Creek Coal Sales, Inc v. Caperton*, 31 F.3d 169, 176 (4th Cir. 1994). Wachovia also submitted evidence of fee awards in three bankruptcy cases in the Eastern District of Virginia, Richmond Division, that approved hourly rates in excess of those claimed by Rudlin and Childress.

In response, W.A.K. submitted declarations of the three attorneys who represented W.A.K. in the immediate case–Bowman T. Bowles, Jr., Churchill G. Bowles, and Joseph E. Blackburn. The three attorneys stated that, although they handled this case on a contingency fee basis, their standard hourly rates are $300 per hour, $150 per hour, and $300 per hour, respectively. W.A.K. also asks the Court to follow the decision in *Grissom v. The Mills Corp.*, 549 F.3d 313 (4th Cir. 2008), which dealt with an award of attorneys' fees in an whistle-blower retaliation case in northern Virginia. *Id.* at 321-24. This Court's analysis, however, must be focused on the present-day prevailing rates for this type of case in the Richmond area, *Plyler*, 902 F.2d at 277, so comparison to the rates set in *Grissom* would be of limited value.

The Court believes that while the rates charged in this case appear to be high, Wachovia has met its burden of demonstrating that the rates charged by its attorneys are consistent with the prevailing rate in the Richmond area for this type of legal work. The Court notes the absence of any evidence from Plaintiffs other than their own rates to

counter the fees claimed by Wachovia's attorneys in their supporting affidavits.

### 6. The Attorneys' Expectations at the Outset of the Litigation

Wachovia states that it intended, from the outset of the case, to recover its attorneys' fees from the Trust. Any attorneys' fees not recovered as a result of these proceedings, or from the third-party defendant Drew Karo, will presumably be paid by Wachovia. As such, the attorneys' expectation to be paid their full fee will be realized regardless of the Court's decision here. Accordingly, this factor carries no weight in determining the reasonableness of the fee.

### 7. The Time Limitations Imposed by the Client or Circumstances

This factor is not relevant as applied to this case.

### 8. The Amount in Controversy and the Results Obtained

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006). Plaintiff's suit sought recovery of more than $3 million. The Court granted Wachovia's motion for summary judgment, finding that Wachovia did not violate its duties as a trustee. The Court also granted Wachovia's motion to dismiss Plaintiff's requests for punitive damages and a temporary restraining order. Although several parts of their motion to dismiss were denied, Wachovia eventually prevailed on all critical issues that were

extensively litigated.[4] These considerations weigh in favor of finding the requested fee reasonable.

### 9. The Experience, Reputation, and Ability of the Attorneys

As Baril and Roberts' declarations attest, Alan Rudlin's excellent reputation within the legal community is beyond dispute. This is further supported by the declarations of Rudlin and Childress outlining their impressive credentials. Their handling of this matter was skillful and professional. This factor weighs in favor of finding the requested rates reasonable.

### 10. The Undesirability of the Case within the Legal Community

There is no reason to conclude that this was an undesirable case. This factor is thus not relevant.

### 11. The Nature and Length of the Professional Relationship Between Attorney and Client

This factor has no material relevance in this case.

### 12. Attorneys' Fees Awards in Similar Cases

Because of the novelty of the issues, Wachovia submits that there are very few cases similar to this one. Wachovia does submit, however, that the fee requested here is consistent with other complex cases within the Fourth Circuit, submitting two cases for

---

[4]Count III of the amended complaint that sought removal of Wachovia as a trustee was dismissed by consent of the parties.

comparison. On review, the Court finds these cases distinguishable for a number of reasons. First, Wachovia points to *ABT Building Prods. Corp. v. Nat'l Fire Ins. Co. of Pittsburgh*, 472 F.3d 99 (4th Cir. 2006), where the Fourth Circuit affirmed an award of nearly $2 million. As noted in the Fourth Circuit opinion, this case involved "nearly three years of extensive pre-trial proceedings" and resulted in a nine day jury trial with sixteen witnesses. *Id.* at 104. Wachovia also draws the Court's attention to *Loudermilk Services, Inc. v. Marathon Petroleum Co.*, 623 F. Supp. 2d 713 (S.D. W.Va. 2009), where the district court awarded $4.25 million in attorneys' fees. That case was a class action lawsuit that resulted in a $25 million settlement, and the attorneys' fees were taken from the settlement amount. *Id.* The *Loudermilk* court adopted a "hybrid" method for calculating attorneys' fees that started with a percentage of the class fund that is checked against a "rough lodestar analysis." *Id.* at 717. As Judge Goodwin noted, the attorneys billed over 20,000 hours, *id.* at 725, the case was litigated over the course of five years, and "was one of the most lengthy and complicated cases [he had] seen in [his] 12 year tenure on the federal bench." *Id.* at 721. The same cannot be said of the present case. This case lasted less than a year and involved less than three hours of oral argument and no trial on the merits.

**B. Analysis**

Taking into account the twelve *Johnson* factors, the Court finds first that Wachovia has met its burden of establishing that the hourly rates it requested are

consistent with the prevailing rates in the Richmond area for this type of legal work. This determination is based, in large part, on the representation by Wachovia that it would have paid this rate even if the fees not recoverable. The affidavits presented by Wachovia also support their contention that their quoted hourly rates are typical of what attorneys charge in this area for this type of legal work. Although the burden rests with Wachovia, W.A.K. has failed to provide any evidence to the contrary.

The Court additionally finds that the number of hours claimed by Wachovia is a bit excessive considering the nature of the litigation and the stage at which it was resolved. As the Court noted above, this was complex litigation, but not of the highest order. The case did not go to trial and consisted of only a few relatively short hearings before summary judgment was granted. As Judge Cacheris commented in a case decided last year, "[t]he Court believes that it would be quite unusual to award attorneys' fees approaching $900,000 for a case that did not require a full trial on the merits." *Corinthian Mortg. Corp. v. ChoicePoint Precision Mktg., LLC*, No. 1:07CV832, 2009 WL 36606 (E.D. Va. Jan. 5, 2009). The same observation applies to the case at hand.

Although the claims presented in this care were atypical, Wachovia failed to point out any fee awards in other cases arguably similar to this one. The two cases cited by Wachovia both consisted of extensive, multi-year litigation and cannot be reasonably compared to the present case. The Court agrees with W.A.K. that the vigorous manner in which the Wachovia attorneys litigated the case contributed in part to a somewhat

excessive number of billable hours. The Court finds that a reduction of the hours claimed by Wachovia's attorneys of 15 percent will bring the hours expended on this case within the bounds of reason.

The Court also believes that many of the fees charged for tasks performed by Mr. Sherman, the paralegal in this case, are not properly recoverable. As the Supreme Court stated, "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10, 109 S. Ct. 2463, 2472 (1989). Among the tasks reported by Mr. Sherman were making deliveries to attorneys, opposing counsel, and the Court, gathering rates for court reporters, and filing documents. After careful review of the records submitted by Wachovia, the Court believes a reduction of the hours attributed to Mr. Sherman should be reduced by 25 percent to account for clerical tasks to reach a reasonable number of hours.

These reductions yield the following lodestar calculations:

|                  | Requested Hours | Adjusted Hours | Rate  | Total        |
|------------------|-----------------|----------------|-------|--------------|
| Alan Rudlin      | 828.9           | 704.6          | $595  | $419,237     |
| William Childress| 827             | 703            | $270  | $189,810     |
|                  | 368.9           | 313.6          | $320  | $100,352     |
| Benjamin Sherman | 393.8           | 295.4          | $128  | $37,811.20   |
|                  |                 |                | **TOTAL** | **$747,210.20** |

There were no unsuccessful claims unrelated to the successful ones, and Wachovia enjoyed a high degree of success in defending the litigation. Accordingly, the Court need not further reduce this number. *Robinson*, 560 F.3d at 244.

## C. Costs

Wachovia requests $78,022.90 in costs expended during the course of this litigation. W.A.K.'s objects the charges for Plaintiffs experts, namely $48,895 charged by H&D Consulting (Thomas D. Hogan). W.A.K. noted that his lawyers contacted Hogan but did not hire him because they found his fee to be excessive. W.A.K. also indicates he spent a total of $14,000 on two experts. Additionally, as there was no trial, Mr. Hogan never testified. The Court finds that an expert fee approaching $50,000 for one month's of work and who was neither deposed nor testified appears facially to be on the high side. Plaintiff, however, has introduced no persuasive evidence to justify reduction of these figures.

W.A.K. also objected to $5,049 of the amount charged by another expert, Thorn McDaniel, but Wachovia provided additional documentation to support this claim.

## IV.

For the above-listed reasons, the Court finds that an award of $825,233.10 – $747,210.20 in attorneys' fees and $78,022.90 in costs – to be reasonable and appropriate in this case. To the extent possible, these costs and fees shall be recovered from the Trust.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Aug 5, 2010
Richmond, VA